UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No.: 8:22-cr-280-VMC-SPF

CHRISTOPHER FROEHLICH
_____/

**SENTENCING MEMORANDUM IN
<u>SUPPORT OF DOWNWARD VARIANCE</u>**

COMES NOW, Defendant, Christopher Froehlich, by and through undersigned counsel, and pursuant to 18 U.S.C. § 3553(a), and files this Sentencing Memorandum in support of 180 months (fifteen years) in the Bureau of Prisons. A sentence of 180 months of imprisonment is sufficient but not greater than necessary to reflect the seriousness of the offense, punish Mr. Froehlich, afford adequate deterrence, and protect the public, while also accounting for his history and characteristics. As grounds in support of his position, Mr. Froehlich states:

**I.  Procedural History**

On August 9, 2022, Mr. Froehlich was indicted on a three (3) count indictment which alleges that on or about July 26, 2018, August 15, 2018, and January 7, 2019, he did employ, use, persuade, induce, entice and coerce a minor to engage in any sexually explicit conduct for the purposes of producing a visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and knowing and having reason to know that such

1

visual depiction would be transported and transmitted in and affecting interstate and foreign commerce and the visual depiction was actually transported and transmitted using an y means and facility of interstate and foreign commerce, in violation of 18 U.S.C. §§ 2251(a) and (e). The indictment contains a forfeiture provision and the property to be forfeited is an Apple iPhone 11, IMEI 351563855589695.

On July 14, 2022, Mr. Froehlich was arrested pursuant to a Complaint. [Dkt. #1]. On July 15, 2022, a hearing on bond and preliminary examination were conducted. The bond motion was denied and an order of detention was entered. [Dkt. #14]. On August 8, 2022, a three (3) count indictment was returned in open court. [Dkt. #15]. On March 2, 2023, the undersigned attorney was appointed to represent Mr. Froehlich. [Dkt. # 42]. On July 19, 2023, Mr. Froehlich appeared before the Honorable Sean P. Flynn and entered pleas of guilty to all counts. Your Honor accepted the plea on that same date. [Dkt. # 63]. Mr. Froehlich will be before the Court for sentencing on January 10, 2024, at 10:00 a.m.

## II. Sentencing Guidelines

The PSR, applying the 2021 Guidelines Manual, calculated a total offense level of 42 resulting in an advisory range of 360 months to life in prison. However, the statutory authorized maximum sentences are less than the maximum of the applicable guideline range; therefore, the guideline range is 360 months to 1080 months (combined statutory maximum for a total of 90 years). See PSR ¶ 76. Mr. Froehlich has a criminal history score of 2, establishing a criminal history category

of II. He was given a downward adjustment for clearly demonstrating acceptance of responsibility under U.S.S.G. §3E1.1.

As this Court is well aware, a United States District Court is no longer limited by the guidelines since the matrix is merely considered advisory. *United States v. Booker*, 543 U.S. 220, 245-267 (2005). The United States Supreme Court in *Booker* gave judges the flexibility to use the sentencing range produced by the Guidelines as a "starting point" or "initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

Moreover, in *United States v. Talley*, 431 F.3d 784 (11th Cir. 2005), the Eleventh Circuit adopted a two-step procedure that district courts should follow when fashioning a sentence in the post-*Booker*, advisory Sentencing Guidelines era. "First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines." *Id.* at 786. Second, the district court must consider the following ten factors: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 3) the need for deterrence; 4) the need to protect the public; 5) the need to provide the defendant with needed educational and vocational training or medical care; 6) the kinds of sentences available; 7) the Sentencing Guidelines range; 8) pertinent policy statements of the Sentencing Commission; 9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to the victims. *Id. See also 18 U.S.C. §3553(a)*. "The

3

weight to be accorded any given §3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir. 2006).

**III.   Request for Variance Pursuant to 18 U.S. Code §3553**

    *a. <u>A sentence of 180 months of imprisonment reflects the seriousness of the offense and provides just punishment for Mr. Froehlich's conduct.</u>*

Courts are directed to impose sentences which are sufficient but not greater than necessary to, among other things, "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Additionally, courts are also directed to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. 3553(a)(6). In cases such as this, where the sentencing guidelines extend well beyond the statutory maximum imposed by Congress, Mr. Froehlich suggests that considering the sentence in other cases of a similar nature is helpful to determine what length of sentence is appropriate to provide just punishment and avoid unwarranted disparities.

In *United States v. Irey*, the Eleventh Circuit addressed the reasonableness of a sentence in the case of William Irey, convicted of production of child pornography in violation of 18 U.S.C. § 2251(c). *Irey*, 612 F.3d 1160 (11th Cir. 2010). Mr. Irey had no criminal history and his total offense level was 43. The appellate court recounts the horrific details of Mr. Irey's behavior at length. Mr.

Irey traveled overseas to engage in sex with children for weeks at a time every year over a period of five years. Id. at 1166-1169. He produced over 1,200 images of himself abusing "at least fifty" different victims between the ages of four and 16 years old; these images depicted rape, sodomy, humiliation, and torture. Id. at 167-168. On remand, after the Eleventh Circuit held that a sentence of just over 17 years was inappropriate given the gravity of his conduct, Mr. Irey received a sentence of 30 years of imprisonment.

Mr. Froehlich suggests that his conduct warrants a sentence of less than 30 years of imprisonment (bottom of the advisory guidelines) when considered relative to the behavior discussed in Irey. Mr. Froehlich's criminal conduct occurred over a much shorter period of time and he did not have hands-on contact with a single victim, and none of the abuse in this case involved the type of horrifying violence detailed in the *Irey* case. He suggests that a sentence of 30 years or more would create an unwarranted sentencing disparity between these two cases.

Mr. Froehlich also asks this Court to consider a defendant who appeared before this Court for sentencing on May 7, 2013, Thomas Meyer, Case No: 8:13-cr-00059-VMC-TGW. On February 7, 2013, Mr. Meyer entered a guilty plea to one count of production of child pornography, in violation of 18 U.S.C. §§ 2251(a). In this case, Mr. Meyer persuaded and attempted to persuade two minor females to produce child pornography and send it to him. For approximately two (2) years, he had sexually explicit online chat and message conversations with a minor victim

5

and made multiple requests for her to produce sexually explicit photographs and send them to him. During the conversations, Mr. Meyer also discussed traveling to the minor victim to engage in sexual activity. Over the course of the communications and on multiple occasions, the minor victim sent Mr. Meyer photographs of her vagina and close-up photos of her genitals as she digitally penetrated herself. The other minor victim was an undercover detective posing as a 13-year-old girl. During the course of the conversations with the detective, Mr. Meyer exposed himself, masturbated on the webcam, sent her child and adult pornography and attempted to persuade her to produce and send him sexually explicit photographs. Mr. Meyer received a sentence of 180 months, or 15 years of imprisonment.

Another, more recent case, Mr. Froehlich also asks this Court to consider is Case No: 8:19-cr-00271-VMC-TGW, Thomas Hill, who appeared before this Court for sentencing on August 18, 2020. On January 7, 2020, Mr. Hill entered guilty pleas to one count of enticement of a minor to engage in sexual activity and production of child pornography, in violation of 18 U.S.C. §§ 2422(b) and 2251(a).

In this case, Mr. Hill, and the minor victim exchanged over 3,000 messages and Mr. Hill required the minor victim to refer to him almost exclusively as "master." During the course of the communications, the minor victim sent sextually explicit materials including images of her vagina and digital penetration. Mr. Meyer received a sentence of 228 months of imprisonment. Mr. Froehlich respectfully suggests that his case more closely parallels Mr. Meyer's and Mr. Hill's

6

cases and respectfully suggests that a sentence of 180 months in prison is appropriate in light of the outcomes in their cases.

Mr. Froehlich submits that a sentence of 180 months is a sentence which appropriately reflects the seriousness of conduct of this nature, promotes respect for the law, and provides just punishment for this conduct. A 15-year sentence demonstrates that society does not tolerate this behavior. It sends a message to an outside observer that this conduct will result in a person forfeiting a decade plus of freedom, and it specifically punishes Mr. Froehlich appropriately for his behavior when considered alongside other similar cases, such as those discussed here. For these reasons, a sentence of 180 months of imprisonment accomplishes these statutory purposes of sentencing.

> b. *A sentence of 180 months of imprisonment protects the public and affords adequate deterrence.*

The United States Sentencing Commission has been studying recidivism among federal offenders since shortly after the enactment of the Sentencing Reform Act (SRA) of 1984. Recidivism is defined as a "person's relapse into criminal behavior, often after the person receives sanctions or undergoes intervention for a previous crime." *Id.,* p. 5.

United States Sentencing Commission has identified a statistically significant relationship between the length of a sentence and deterrence. More specifically, offenders incarcerated for more than 120 months are estimated to be

7

approximately 30% to 45% less likely to recidivate than those serving shorter periods of incarceration. *Id.*

A sentence of fifteen years (180 months) of imprisonment is longer than the 120-month period threshold for demonstrable deterrence. The victim in this case will be well into adulthood and specifically protected from Mr. Froehlich, and this lengthy prison sentence coupled with an additional period of supervised release will ensure that the public is protected against the low likelihood that Mr. Froehlich recidivates. Accordingly, a sentence of 180 months of imprisonment is sufficient to protect the victim and the public generally, and to act as a specific deterrent for Mr. Froehlich.

    c. *A sentence of 180 months of imprisonment recognizes that Mr. Froehlich has taken responsibility for his actions and has acted to minimize any further trauma to the victim.*

The United States Sentencing Commission recognizes a legitimate societal interest in giving credit to any defendant who demonstrates acceptance of responsibility for their offense by pleading guilty and truthfully admitting to their conduct. U.S.S.G. § 3E1.1 cmt. n.1, and background. A defendant who pleads guilty and admits to their conduct waives significant constitutional protections in favor of conserving the resources of the courts and of the executive branch. Additionally, such pleas spare victims and their loved ones from having to live through and potentially participate in a trial which could force them to relive traumatic events. For these reasons, among others, the Sentencing Guidelines take the position that a defendant who affirmatively takes responsibility for their crimes "is

appropriately given a lower offense level that a defendant who has not demonstrated acceptance of responsibility." U.S.S.G. §3E1.1, background.

In this case, Mr. Froehlich has accepted responsibility and admitted to his conduct. Imposition of the maximum potential sentence would effectively discount Mr. Froehlich's efforts to take responsibility for his actions and to shield the victim from the trauma of unnecessary court proceedings. Sentencing him to the highest sentence available under the law carries the danger of acting to discourage other similarly situated defendants from conserving resources and sparing other victims. For these reasons, a sentence of 90 years of imprisonment is contrary to societal interests and is longer than necessary to accomplish the statutory purposes of sentencing.

    d. *History and Characteristics of the Mr. Froehlich*

As outlined in the PSR, Mr. Froehlich suffered from physical abuse at the hands of his stepfather for several years. He recalled being hit in the head with a frying pan and slapped in the face repeatedly. Mr. Froehlich stopped attending school in the 10th grade and his GPA was only .0971. It is also noted that he received numerous disciplinary reports throughout his time in school.

Mr. Froehlich suffered the loss of his younger sister Destiny, who died from Goodpasture Syndrome, a serious autoimmune disease that attacks the lungs and kidneys. His mother is now the sole caretaker for Destiny's son, Deonte. Although shocked and saddened by this situation, Mr. Froehlich's family remains

9

supportive. He is very close with his mother (who suffers from epilepsy) and they speak on a weekly basis.

The PSR states Mr. Froehlich does not have a history of mental or emotional health issues, nor has he received any treatment. The criminal history section notes Mr. Froehlich had a violation of probation in 2011 for failure to complete mental health evaluation and treatment, among other things. It appears Mr. Froehlich has never been evaluated for mental or emotional health issues. I submit to you that Mr. Froehlich's history and current charges may indicate undiagnosed mental and/or emotional health issues that have not been addressed. A term of incarceration for 180 months could include the needed medical care or correctional treatment to tackle these concerns in the most effective manner.

While incarcerated, Mr. Froehlich would like to attend business courses and obtain a plumbing certification.

## IV. Conclusion

Based on the circumstances set forth above, it is respectfully requested the Court impose a downward variance and sentence Mr. Froehlich to a term of 180 months of imprisonment.

DATED this 4th day of January 2024.

Respectfully submitted,

*/s/ Vanessa L. King*
Vanessa L. King
Florida Bar No. 90849
146 2nd St. N. Ste. 310-N

St. Petersburg, FL 33701
P: (727) 233-4233
F: (727) 265-1865

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically with the Clerk of the Court using the CM/ECF system, 4th of January 2024.

By: */s/ Vanessa L. King*
Vanessa L. King